Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF SEATTLE,<br><br>               Plaintiff,<br><br>    v.<br><br>MORGAN STANLEY & CO., INC., et al.,<br><br>               Defendants. | PLAINTIFF'S OMNIBUS MOTION TO REMAND<br><br>NOTED ON MOTION CALENDAR: March 26, 2010<br><br>**ORAL ARGUMENT REQUESTED**<br><br>No. 2:10-cv-00132-RSM |
| FEDERAL HOME LOAN BANK OF SEATTLE,<br><br>               Plaintiff,<br><br>    v.<br><br>BARCLAYS CAPITAL, INC., et al.,<br><br>               Defendants. | No. 2:10-cv-00139-RSM |
| FEDERAL HOME LOAN BANK OF SEATTLE,<br><br>               Plaintiff,<br><br>    v.<br><br>DEUTSCHE BANK SECURITIES INC., et al.,<br><br>               Defendants. | No. 2:10-cv-00140-RSM |

YARMUTH WILSDON CALFO

| | | |
|---|---|---|
| FEDERAL HOME LOAN BANK OF SEATTLE, | | |
| | Plaintiff, | No. 2:10-cv-00146-RSM |
| v. | | |
| UBS SECURITIES LLC, et al., | | |
| | Defendants. | |

| | | |
|---|---|---|
| FEDERAL HOME LOAN BANK OF SEATTLE, | | |
| | Plaintiff, | No. 2:10-cv-00147-RSM |
| v. | | |
| BANK OF AMERICA SECURITIES LLC, et al., | | |
| | Defendants. | |

| | | |
|---|---|---|
| FEDERAL HOME LOAN BANK OF SEATTLE, | | |
| | Plaintiff, | No. 2:10-cv-00148-RSM |
| v. | | |
| COUNTRYWIDE SECURITIES CORP., et al., | | |
| | Defendants. | |

| | | |
|---|---|---|
| FEDERAL HOME LOAN BANK OF SEATTLE, | | |
| | Plaintiff, | No. 2:10-cv-00150-RSM |
| v. | | |
| MERRILL LYNCH PIERCE FENNER & SMITH INC., et al., | | |
| | Defendants. | |

PLAINTIFF'S OMNIBUS MOTION TO REMAND
NO. 2:10-cv-00132-RSM – Page 2

1

2   FEDERAL HOME LOAN BANK OF
    SEATTLE,
3
                      Plaintiff,          No. 2:10-cv-00151-RSM
4
            v.
5   BEAR, STEARNS & CO. INC., et al.,
6                     Defendants.

7   FEDERAL HOME LOAN BANK OF
    SEATTLE,
8
                      Plaintiff,          No. 2:10-cv-00167-RSM
9
            v.
10
    CREDIT SUISSE SECURITIES (USA)
11  LLC, et al.,
12                    Defendants.

13  FEDERAL HOME LOAN BANK OF
    SEATTLE,
14
                      Plaintiff,          No. 2:10-cv-00168-RSM
15
            v.
16
    RBS SECURITIES, INC., et al.,
17
                      Defendants.
18
    FEDERAL HOME LOAN BANK OF
19  SEATTLE,
20                    Plaintiff,          No. 2:10-cv-00177-RSM
21          v.
22  GOLDMAN, SACHS & CO., et al.,
23                    Defendants.
24

25

26

PLAINTIFF'S OMNIBUS MOTION TO REMAND
NO. 2:10-cv-00132-RSM – Page 3

On December 23, 2009, plaintiff Federal Home Loan Bank of Seattle filed these 11 similar actions in the Superior Court of Washington for King County. Relying on four invalid theories of federal jurisdiction, the defendants removed all 11 actions to this Court.[1] Because the four grounds for removal in all 11 actions are invalid for the same reasons, the Bank respectfully requests in this omnibus motion that the Court remand all 11 actions to state court.

All defendants argue that the Bank's legislative charter confers federal jurisdiction over every action to which the Bank is a party because the charter provides that the Bank may "sue and be sued, [] complain and [] defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a). All defendants also argue that the Bank is an agency of the United States, so actions that it commences are subject to federal jurisdiction under 28 U.S.C. § 1345. The defendants are wrong on both counts. The Bank's charter does not *create* jurisdiction; rather, it permits the Bank to "sue and be sued" only in courts that already are "of competent jurisdiction." (*See* Point I.) And although the Bank may be an *instrumentality* of the United States, it clearly is not an *agency* of the United States, so actions that it commences are not subject to federal jurisdiction under section 1345. (*See* Point II.)

In ten of the eleven actions, the defendants argue also that this Court has diversity jurisdiction. But, as a federally chartered corporation, the Bank is a citizen of no state for purposes of diversity jurisdiction. (*See* Point III.)

---

[1] The actions originally were assigned to several Judges of this Court. On February 1, 2010, plaintiff filed a notice of related actions, and on February 5, 2010, all 11 actions were transferred to the Honorable Ricardo S. Martinez.

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

Finally, in two of these actions, the defendants argue that this Court has "related to"

bankruptcy jurisdiction under 28 U.S.C. § 1334 because, if a judgment is entered against

those defendants, they may then have the right to sue bankrupt originators of mortgage

loans for indemnity or contribution. These defendants are mistaken. Possible future claims

against bankrupt entities are not sufficient to create "related to" bankruptcy jurisdiction.

(*See* Point IV.A.) And even if they were sufficient, the Court nevertheless should remand

these actions to state court on equitable grounds pursuant to 28 U.S.C. § 1452. (*See* Point

IV.B.)

Having no subject-matter jurisdiction, the Court should remand all 11 cases to state

court.

## THE CLAIMS IN THE COMPLAINT

These are actions under the Securities Act of Washington to rescind plaintiff's

purchases from the defendants of certificates backed by residential mortgage loans. Plaintiff

is a bank created by the Federal Home Loan Bank Act. Under its Organization Certificate,

the Bank is to operate in Federal Home Loan Bank District Number 12, which comprises

the States of Alaska, Hawaii, Idaho, Montana, Oregon, Utah, Washington, and Wyoming,

as well as Guam, American Samoa and the Northern Mariana Islands.[2]

The certificates that defendants sold the Bank are so-called asset-backed securities,

or ABS, created in a process known as securitization. Securitization begins with loans (for

example, loans secured by mortgages on residential properties, credit card loans, etc.) on

which the borrowers are to make payments, usually monthly. The entity that makes the

---

[2] The facts in this section are taken from the complaints. (*See, e.g., Federal Home Loan Bank of Seattle v. Goldman Sachs & Co., et al.*, No. C10-177, ¶¶ 10-17.)

PLAINTIFF'S OMNIBUS MOTION TO REMAND
NO. 2:10-cv-00132-RSM – Page 5

loans is known as the originator of the loans. The process by which the originator decides whether to make particular loans is known as the underwriting of loans. In the loan underwriting process, the originator applies various criteria to try to ensure that the loans will be repaid. Until the loans are securitized, the borrowers on the loans make their loan payments to the originator. Collectively, the payments on the loans are known as the cash flow from the loans.

In a securitization, a large number of loans, usually of a similar type, are grouped into a collateral pool. The originator of those loans sells them (and, with them, the right to receive the cash flow from them) to a trust. The trust pays the originator cash for the loans. The trust raises the cash to pay for the loans by selling bonds, usually called certificates, to investors such as the Bank. Each certificate entitles its holder to an agreed part of the cash flow from the loans in the collateral pool.

When a traditional company issues common shares, bonds, or other securities, it and the underwriters of its securities must disclose material information about the business and management of the company to potential investors in those securities. In a securitization trust, however, there is no business or management to describe. Rather, the necessary disclosures are about the structure of the transaction and especially about the credit quality of the loans in the collateral pool, the sole source of cash from which to pay the certificateholders.

When they offered and then sold these certificates to the Bank, the defendants made numerous statements to the Bank about the certificates and the credit quality of the mortgage loans that backed them. Many of those statements were untrue. Moreover, the defendants omitted to state many material facts that were necessary in order to make their

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

statements not misleading. For example, the defendants made untrue statements, or omitted important information, about such material facts as the percentage of equity that borrowers had in their homes (reflected in the loan-to-value ratio, or the ratio of the amount of the mortgage loan to the value of the house that secured the loan), the number of borrowers who actually lived in the houses that secured their loans, the credit scores of the borrowers, and the business practices of the lenders that made the loans.

Each of the 11 actions pleads only a single state-law claim under The Securities Act of Washington, Title 21, Chapter 20 of the Revised Code of Washington, RCW 21.20.010(2).

## ARGUMENT

In January 2010, defendants removed these cases from the Superior Court of Washington to this Court. Their notices of removal cite four supposed bases of federal jurisdiction. None of these bases of jurisdiction actually exists, so the Court should remand all of these cases to state court.

## I.    THE BANK'S CHARTER DOES NOT CREATE ORIGINAL JURISDICTION IN THE FEDERAL COURTS.

Section 12(a) of the Federal Home Loan Bank Act, 12 U.S.C. § 1432(a), provides that the Bank may "sue and be sued, [] complain and [] defend, *in any court of competent jurisdiction*, State or Federal." (Emphasis added.) This is referred to as a "sue and be sued" provision, and Congress often includes it among the activities in which federally chartered organizations are permitted to engage.

Defendants argue that, because section 1432(a) authorizes the Bank to "sue and be sued" in federal court, that section must also confer federal subject-matter jurisdiction over

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

any case to which the Bank is a party. (*See, e.g.,* Goldman, Sachs & Co. Notice of Removal, No. C10-177, ¶¶ 10-12.) Defendants are mistaken. The statute expressly limits the Bank's authority to "sue and be sued" to courts "of *competent jurisdiction,*" that is, courts that already have subject-matter jurisdiction. If defendants were correct that section 1432(a) itself *creates* federal subject-matter jurisdiction, then the words "in any court of competent jurisdiction" would be meaningless. *Every* federal court would be "of competent jurisdiction" – the statute itself would make it so. Nothing in the text of section 1432(a) or the cases interpreting it permits defendants to disregard the words "of competent jurisdiction" in the statute.

Indeed, the Ninth Circuit has already rejected the defendants' position. In *Doe v. Mann,* 415 F.3d 1038 (9th Cir. 2005), that court held that, when a federal statute provides that an action may be brought in a "court of competent jurisdiction," a court must "look to outside sources [*i.e.,* sources outside the statutory provision itself] of jurisdictional authority." *Id.* at 1045 (quoting *Califano v. Sanders,* 430 U.S. 99, 106 n. 6 (1977)).

> Applying *Califano,* we conclude that § 1914's reference to "any court of competent jurisdiction" alone does not create subject-matter jurisdiction in the federal district court sufficient to review and vacate state custody decrees. Consequently, we must determine whether the federal district court had *jurisdiction from an independent source,* 28 U.S.C. § 1331, making it a "court of competent jurisdiction" that is authorized by § 1914 to invalidate certain state court child custody proceedings.

*Id.* (emphasis added). The Ninth Circuit relied on the Supreme Court's holding in *Califano* that the words "'in a court of competent jurisdiction' . . . seem to look to outside sources of jurisdictional authority." 430 U.S. at 106 n.6; *see also Indus. Indem., Inc. v. Landrieu,* 615 F.2d 644, 646–47 (5th Cir. 1980) (provision in National Housing Act that the "Secretary shall . . . be authorized . . . to sue and be sued in any court of competent jurisdiction" does

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

not create subject-matter jurisdiction but instead "requires another statute to grant jurisdiction in order to make a court competent to hear a case against the Secretary otherwise authorized by Section 1702").

Defendants ignore *Doe v. Mann* and argue mistakenly that this Court has jurisdiction over these actions based on the Supreme Court's decision in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992). (*See, e.g.,* Goldman, Sachs & Co. Notice of Removal, No. C10-177, ¶¶ 10-11.) *Red Cross* is the fifth and latest in a two-century-long line of Supreme Court cases about whether certain variations of "sue and be sued" provisions create subject-matter jurisdiction. *See Red Cross*, 505 U.S. 247; *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447 (1942); *Bankers Trust Co. v. Texas & Pac. R. Co.*, 241 U.S. 295 (1916); *Osborn v. Bank of United States*, 9 Wheat. 738, 6 L.Ed. 204 (1824); *Bank of the United States v. Deveaux*, 5 Cranch 61, 3 L. Ed. 38 (1809). Each case turned on the precise language of the "sue and be sued" provision in question. In this line of cases, the Supreme Court held that two of the provisions (in *Deveaux* and *Bankers Trust*) did *not* create federal subject-matter jurisdiction, and that three others (in *Red Cross, D'Oench,* and *Osborne*) did.

In no case, however, has the Supreme Court held that a statute that permits an entity to "sue and be sued" in a federal court "of competent jurisdiction" can – let alone must – be read to create subject-matter jurisdiction. *Red Cross* is no exception. The federal charter of the Red Cross permits it to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 505 U.S. at 248, *citing* 36 U.S.C. § 2. To be sure, this language bears a superficial resemblance to the Bank's charter (as do the "sue and be sued" provisions in all five of the Supreme Court cases cited above), but it omits the

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

crucial words "in a court of competent jurisdiction," which are present in the Bank's charter and which, the Ninth Circuit decided in *Doe v. Mann*, are dispositive. *Doe v. Mann*, 415 F.3d at 1045.

Only twice since the Supreme Court's decision in *Red Cross* have parties actually litigated whether federal subject-matter jurisdiction can be created by a "sue and be sued" provision that refers specifically to courts "of competent jurisdiction." Both courts agreed that it cannot. *See Knuckles v. RBMG, Inc.*, 481 F. Supp. 2d 559, 563 (S.D. W. Va. 2007); *Fed. Nat'l Mortgage Ass'n v. Sealed*, 457 F. Supp. 2d 41, 44–46 (D.D.C. 2006). These courts reasoned, just as did the Ninth Circuit in *Doe v. Mann*, that "competent jurisdiction" means that Congress intended to require an *independent basis* of subject-matter jurisdiction.

> [T]he "sue and be sued" provision found in Fannie Mae's charter is not identical to the "sue and be sued" provision found in the Red Cross charter. The differences between the two are not merely semantic, but have jurisdictional effect . . . . Accordingly, the phrase "any court of competent jurisdiction, State or Federal," found in Fannie Mae's charter, but not in the charter of the Red Cross, must be given effect.  For the phrase "any court of competent jurisdiction" to have any meaning it should be read as differentiating between state and federal courts that possess "competent" jurisdiction, *i.e.*, an independent basis for jurisdiction, from those that do not. To conclude, as Fannie Mae suggests, that its charter could be read to confer original federal jurisdiction in all suits in which it is a party, notwithstanding the absence of an independent basis for federal jurisdiction, would effectively eliminate the phrase "of competent jurisdiction" from the charter. Stated differently, were the court to adopt Fannie Mae's reading of its charter, all federal courts would possess jurisdiction, regardless of competency.

*Knuckles,* 481 F. Supp. 2d at 563.

Defendants note correctly that the District of Columbia Circuit held in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Raines,* 534 F.3d 779, 784–85 (D.C. Cir. 2008), that Fannie Mae's charter created federal jurisdiction even though its "sue

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

and be sued" clause refers to "any court of competent jurisdiction, State or Federal." *Id*. For four reasons, however, *Pirelli* is not persuasive authority for this Court.

*First,* there was no dispute about jurisdiction before the court in *Pirelli*. As Judge Brown noted in her separate opinion,[3] "[a]ll parties in [the] litigation teamed up to manufacture jurisdiction." *Id*. at 795 (concurring opinion). The D.C. Circuit itself raised the question of its subject-matter jurisdiction and requested briefs from the parties, but both plaintiffs and defendants argued that the court had subject-matter jurisdiction. Thus, the court was deciding an uncontested question. Worse, it was considering a question on which both of the litigants were advocating actively for the same conclusion, which substantially diminishes the weight of the decision as precedent.  *See, e.g., Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994) (rendering judgment without the benefit of adversarial briefing and argument "run[s] the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process for sharpening the issues for decision") (internal quotations omitted); *Brown v. United States*, 890 F.2d 1329, 1342 (5th Cir. 1989) ("the natural tendency of a busy [] court is to accede to a proposed order without great deliberation when all known interested parties are in agreement and when state interests are not adversely affected").

For the same reason, it is irrelevant that the Federal Home Loan Bank of Des Moines has twice "removed an action to federal court, arguing that the 'sue and be sued' provision in the FHLB Act confers original jurisdiction." (*See, e.g.,* Goldman, Sachs & Co.

---

[3] Judge Brown filed a separate opinion in *Pirelli* in which she disagreed vehemently with the majority's holding that Fannie Mae's charter created federal subject-matter jurisdiction. Technically, however, it was a "concurring opinion," because the majority ultimately held that, although the court had jurisdiction, the case should have been dismissed on other grounds.

PLAINTIFF'S OMNIBUS MOTION TO REMAND
NO. 2:10-cv-00132-RSM – Page 11

Notice of Removal, No. C10-177, ¶ 13.) The court's jurisdiction in both of those actions was uncontested, so neither case is a relevant precedent for this Court.[4] It is no coincidence that, as discussed above, the only two courts in which this question actually was *litigated* both held that a provision like section 1432(a) that refers to "courts of competent jurisdiction" does *not* create federal subject-matter jurisdiction.[5]

*Second*, the court's decision in *Pirelli* was based on specific facts about the Fannie Mae charter that are not true of the Bank's charter. In particular, the majority opinion in *Pirelli* relied heavily on the fact that the words "of competent jurisdiction" were not in the original Fannie Mae charter that Congress enacted in 1934, but were first inserted when Congress "completely revamped" the charter in the Housing Act of 1954. *Pirelli*, 534 F.3d at 786. The majority therefore based its ruling on "the congressional expectations associated with 'sue and be sued' provisions *during the middle of the 20th Century when this statutory change was made*." *Id.* at 787 (emphasis added). Indeed, the court held that "therefore, we

---

[4] Defendants cite two cases in which the Des Moines Bank removed an action to federal court based on its charter. (*See, e.g.,* Countrywide Notice of Removal, No. C10-148, ¶ 12, *citing O'Connor Enter. Group v. Spindustry Sys., Inc.*, Civ. No. 4:09-CV-01483 (S.D. Tex. May 18, 2009); *Ewing v. Fed. Home Loan Bank of Des Moines*, No. 4:09-cv-106 (S.D. Iowa 2009)). In *O'Connor*, plaintiffs made no motion to remand, and the question of federal jurisdiction was not briefed by the parties. In *Ewing*, the Des Moines Bank initially removed under 28 U.S.C. § 1345 on the theory that the Bank is an agency of the United States. Plaintiffs moved to remand. After the court *rejected* that theory of jurisdiction, the Des Moines Bank raised its charter as a basis of jurisdiction. This second assertion of federal jurisdiction went uncontested, however, and the court accepted it without analysis. *Ewing*, 645 F. Supp. 2d 707, 709 (S.D. Iowa 2009).

[5] The majority opinion in *Pirelli* stated that "we agree, however, with the majority of district courts that have confronted the question since *Red Cross*: Section 1723a(a) provides federal subject-matter jurisdiction in Fannie Mae cases." *Pirelli*, 534 F.3d at 785, *citing Grun v. Countrywide Home Loans, Inc.*, 2004 WL 1509088, at *2 (W.D. Tex. July 1, 2004); *Connelly v. Fed. Nat'l Mortgage Ass'n*, 251 F. Supp. 2d 1071, 1073 (D. Conn. 2003); *C.C. Port, Ltd. v. Davis–Penn Mortgage Co.*, 891 F. Supp. 371, 372 (N.D. Tex.1994), *aff'd*, 58 F.3d 636 (5th Cir.1995); *Peoples Mortgage Co. v. Fed. Nat'l Mortgage Ass'n*, 856 F. Supp. 910, 917 (E.D. Pa.1994). Not a single court in any of those cases, however, even analyzed whether it had jurisdiction. Jurisdiction was simply assumed. And certainly in none of those cases was jurisdiction contested and briefed for the court to decide.

---

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

think it abundantly clear that Congress *in 1954* would not have thought or intended the words 'of competent jurisdiction' to negate automatic federal jurisdiction for Fannie Mae cases." *Id.* (emphasis added). All of these facts, which were essential to the holding of the majority in *Pirelli*, are unique to Fannie Mae. In contrast, section 1432(a) has always had precisely the same language in its "sue and be sued" provision since it was first passed in 1932. Because Congress could not have been aware in 1932 of the expectations of future Congresses in the "middle of the 20th Century," this too substantially diminishes the value of *Pirelli* as a precedent for this Court.

*Third*, the D.C. Circuit in *Pirelli* was not bound by the Ninth Circuit's decision in *Doe v. Mann*. Therefore, that court was free (as this Court is not) to interpret "competent jurisdiction" to refer to something other than an independent basis of subject-matter jurisdiction. If, however, the words "competent jurisdiction" in section 1432(a) are read (as they must be under *Doe v. Mann*) to require a basis of federal subject-matter jurisdiction other than the sue-and-be-sued provision itself, then section 1432(a) cannot possibly be a basis for federal jurisdiction of these actions.

*Fourth*, even if *Pirelli* were not unpersuasive precedent for the three reasons discussed above, we respectfully submit that the case was wrongly decided. The majority misunderstood *Red Cross* to have stated a bright-line rule that if a "sue and be sued" provision includes the word "Federal," then that "all-important word" itself creates federal subject-matter jurisdiction. *Pirelli*, 534 F.3d at 787.

The Supreme Court never created any such "clear rule," *id.* at 788. Nor would it have, because such a simplistic rule is implausible. In her separate opinion in *Pirelli,* Judge Brown explained why.

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

2
Consider this hypothetical statutory provision: "Fannie Mae may sue and be
sued in federal court *only if* another statute independently confers subject-
matter jurisdiction." Under the majority's test, this hypothetical provision
would create "automatic federal jurisdiction" simply because it *mentions*
federal courts—even though the text evinces a contrary meaning. But that
cannot be; a mere mention of federal courts cannot justify disregarding
statutory barriers to federal jurisdiction. In short, the phrase "federal courts"
isn't a talisman.

3

4

5

6
*Id.* at 795 (concurring opinion) (emphasis in original).

7
*Doe v. Mann* established an unequivocal rule in this Circuit: a statutory provision

8
that refers to a "court of competent jurisdiction" does not create subject-matter jurisdiction.

9

10
There must be an independent basis of subject-matter jurisdiction that makes a federal court

11
"competent" to hear the action. Nothing in *Red Cross* even hints at modifying that rule.

12
This Court is therefore bound to apply the rule of *Doe v. Mann* and remand these actions to

13
state court.

14
**II.   THE BANK IS NOT AN "AGENCY" OF THE UNITED STATES.**

15
The second ground on which defendants removed all 11 actions is 28 U.S.C. § 1345,

16
which provides:

17

18
Except as otherwise provided by Act of Congress, the district courts shall
have original jurisdiction of all civil actions, suits or proceedings
commenced by the United States, or by any agency or officer thereof
expressly authorized to sue by Act of Congress.

19

20
Defendants argue that "[a]s a Federal Home Loan Bank, Plaintiff is an agency of the

21
United States," so federal district courts have original jurisdiction over any action

22
commenced by the Bank. (*See, e.g.,* Goldman, Sachs & Co. Notice of Removal, No. C10-

23
177, ¶ 14.) In fact, however, the Bank is not an agency of the United States, so this Court

24
does not have subject-matter jurisdiction over the Bank's actions under section 1345.

25

26

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

To establish that the Bank is an agency of the United States, defendants rely solely on a case decided by the Ninth Circuit in 1952, which stated in dicta that "all Federal Home Loan Banks within the System are, and operate as, public agencies and instrumentalities of the federal government." *Fahey v. O'Melveny & Myers,* 200 F.2d 420, 446–47 (9th Cir. 1953). But, in *Fahey,* the Ninth Circuit was not considering whether the federal courts had jurisdiction under section 1345 of actions brought by the Bank, or even whether the Bank was an "agency." It was considering instead whether a Federal Home Loan Bank was immune from suit under the doctrine of sovereign immunity. Moreover, read carefully, *Fahey* did not even find that the Federal Home Loan Bank was an "agency" of the United States; its precise statement was that Federal Home Loan Banks are "public agencies and *instrumentalities* of the federal government." 200 F.2d 420, 446–47 (9th Cir. 1953) (emphasis added). Indeed, in *Association of Data Processing Service Organizations, Inc. v. Federal Home Loan Bank Board,* the Sixth Circuit interpreted *Fahey* to hold that the Federal Home Loan Banks are "federal instrumentalities" – not agencies of the United States. 568 F.2d 478, 480 (6th Cir. 1977). (The Sixth Circuit distinguished between the Federal Home Loan Bank *Board,* which, it decided, was an agency of the United States, and the Banks themselves, which were mere instrumentalities. *Id.*)

Section 1345 gives the federal courts jurisdiction only over actions commenced by *agencies* of the United States. There is, therefore, a crucial difference between agencies of the United States, on the one hand, and instrumentalities of the United States (like the Bank), on the other. The Ninth Circuit clarified the importance of this distinction in *In re Hoag Ranches v. Stockton Production Credit Association.*

III
YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

[A]n organization does not become a government agency simply because it is federally chartered and regulated. Nor is it dispositive that the organization is designated as a federal instrumentality. . . . *Many financial institutions are federally chartered and regulated and are considered federal instrumentalities, without attaining the status of government agencies* within the meaning of federal procedural rules.

846 F.2d 1225, 1227 (9th Cir. 1988) (emphasis added) (internal citations omitted).

*Fahey* ignores this question entirely by referring to the Bank as both an "agency" and an "instrumentality." But *Hoag*, which defendants ignore, was decided 30 years after *Fahey* and addressed the precise question before the Court, *i.e.*, the meaning of the term "agency" in section 1345. Under *Hoag*, it is clear that the Bank may be an instrumentality, *but that it is not an agency*, of the federal government. These are the six factors that *Hoag* used to determine whether an entity is an agency of the United States under 28 U.S.C. § 1345.

(1) the extent to which the alleged agency performs a governmental function; (2) the scope of government involvement in the organization's management; (3) whether its operations are financed by the government; (4) whether persons other than the government have a proprietary interest in the alleged agency and whether the government's interest is merely custodial or incidental; (5) whether the organization is referred to as an agency in other statutes; and (6) whether the organization is treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act.

*In re Hoag Ranches*, 846 F.2d at 1227–28. *See also Scott v. Federal Reserve Bank of Kansas City*, 406 F.3d 532, 536–38 (8th Cir. 2005) (adopting and applying the "*Hoag* factors" to determine whether the Federal Reserve Bank was an "agency").

Under the *Hoag* test, the Bank is not an agency of the United States.  Although the Bank is federally regulated, the federal government does not participate in the day-to-day management or operations of the Bank. (Declaration of Vincent L. Beatty, made March 11, 2010, ¶ 2.) Management of the Bank is vested by law in the Bank's board of 9 directors, all

YARMUTH WILSDON CALFO

of whom are elected by the Bank's shareholder members. (*Id.*) The Bank's operations are not financed by the federal government; the Bank receives no tax dollars. (*Id.*) Instead, the Bank's operations are financed entirely by its member banks, all of which have a private, proprietary interest in the Bank. (Beatty Decl. ¶ 3.) Indeed, as the Sixth Circuit stated in *Data Processing*, "[w]hile a large block of that stock had originally been purchased by the federal government due to inadequate capitalization during the Great Depression, at present the capital stock of each home loan bank is owned entirely by its members." 568 F.2d at 480. Furthermore, the Bank is not referred to as an "agency" in other federal statutes, nor is it an arm of the government that may be sued under the Federal Tort Claims Act. *See Rheams v. Bankston, Wright & Greenhill*, 756 F. Supp. 1004, 1008 (W.D. Tex. 1991) (holding that the Federal Home Loan Bank of Dallas is not a "federal agency" within meaning of Federal Tort Claims Act).

Thus, under *Hoag*, it is clear that the Bank is not an agency of the United States. This Court therefore lacks jurisdiction under section 1345 and should remand these actions to state court.

## III.   THIS COURT LACKS DIVERSITY JURISDICTION BECAUSE THE BANK IS NOT A CITIZEN OF ANY STATE.

Defendants in 10 of the 11 actions[6] argue that this Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). Defendants have misstated the law. Section 1332 provides that federal district courts "shall have original jurisdiction of all civil

---

[6] Notably, the Goldman, Sachs & Co. defendants did not join in this baseless ground for removal. *See* Goldman, Sachs & Co. Notice of Removal, No. C10-177, p. 2 n. 2 ("Defendants understand that in other similar actions brought by Plaintiff in the Superior Court of the State of Washington, King County, against other financial services institutions, certain of those institutions have included as a basis for removal diversity of citizenship pursuant to 28 U.S.C. § 1332.  To the extent such a basis for removal applies, Defendants adopt it as well.").

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

actions . . . between citizens of different States." Section 1332(a)(1) cannot apply to these

actions, however, because, as a federally chartered corporation, the Bank is not a citizen of

any state. *Bankers Trust Co. v.Texas & Pac. Ry. Co*., 241 U.S. 295, 309–10 (1916); *Prize*

*Energy Res., L.P. v. Santa Fe Pac. R.R. Co*., 2009 WL 160359, *2 (D. Ariz. Jan. 22, 2009);*

*Auriemma Consulting Group, Inc. v. Universal Sav. Bank*, 367 F. Supp. 2d 311, 313

(E.D.N.Y. 2005). There are only two exceptions to this general rule, and neither applies

here.

  First, Congress has sometimes stated in the charter of a federally chartered

organization that it shall be deemed a citizen of a particular state. *Iceland Seafood Corp. v.*

*Nat'l Consumer Coop*., 285 F. Supp. 2d 719, 723 (E.D. Va. 2003); *Burton v. U.S. Olympic*

*Comm.*, 574 F. Supp. 517, 518–19 (C.D. Cal. 1983). The Bank's charter, 12 U.S.C.

§ 1432(a), says nothing about its citizenship. Thus, this exception does not apply.[7] *See*

*Iceland Seafood*, 285 F. Supp. 2d at 723; *Little League Baseball, Inc. v. Welsh Publ'g*

*Group, Inc.*, 874 F. Supp. 648, 651 (M.D. Pa. 1995).

  *Second*, a federally chartered corporation may be deemed to be a citizen of a state if

its activities are "localized" within that state. To show that the activities of a federally

chartered corporation are "localized," defendants would have to demonstrate that virtually

---

[7] Defendants mistakenly argue that the Bank's Certificate of Organization "states that it will
be established in the State of Washington and that the location of its principal office will be in the
state of Washington." (Bear Stearns Notice of Removal, No. C10-151. ¶ 20.) The law is clear,
however, that the *statute itself* must designate the entity as a citizen of a particular state for this
exception to apply. *See Lehman Bros. Bank, FSB v. Frank T. Yoder Mortgage*, 415 F. Supp. 2d 636,
640 & n.8 (E.D. Va. 2006) (noting exception to general rule only where *Congress* provides for
citizenship of federally chartered corporation in a particular state); *Iceland Seafood*, 285 F. Supp. 2d
at 723 (noting that exception applies where *chartering statute* expressly provides for citizenship in a
particular state); *Monsanto Co. v. Tennessee Valley Authority*, 448 F. Supp. 648, 650 (N.D. Ala.
1978) ("A corporation created by an Act of Congress and whose activities . . . are not to be confined

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

all of its activities are conducted in a single state. *Prize Energy Resources*, 2009 WL 1560359 at *2; *Burton*, 574 F. Supp. at 519. A federally chartered corporation that is authorized to, and does, conduct business in several states, has only national citizenship. *See Auriemma*, 367 F. Supp. 2d at 313; *Little League Baseball*, 874 F. Supp. at 651.

The Bank's activities are not "localized" in any one state. The Bank is expressly authorized to conduct business, and does in fact conduct business, in Alaska, Hawaii, Idaho, Montana, Oregon, Utah, Washington, Wyoming, as well as Guam, American Samoa and the Northern Mariana Islands. (Beatty Decl. ¶ 6.) Indeed, as defendants themselves have noted, the Bank has twice as many members that are citizens of states other than Washington (256) as it does members that are citizens of Washington (112). (*See* Countrywide Notice of Removal, No. C10-148, ¶23 (citing list of members on the Bank's website as of January 13, 2010; *see also* Beatty Decl. ¶ 5.))

The fact that the Bank's principal office is in Seattle (*see, e.g.*, Credit Suisse Notice of Removal, No. C10-167, ¶ 11) certainly is not sufficient to make the Bank a citizen of Washington or to demonstrate that the Bank's activities are "localized" in any one state.[8] *See Little League*, 847 F. Supp. at 652; *Monsanto Co. v. Tennessee Valley Auth.*, 448 F. Supp. 648, 650 (N.D. Ala. 1978). When a federally chartered bank conducts business in several states, it is not deemed a citizen of the state in which its principal office is located. *See, e.g.*, *Burton*, 574 F. Supp. at 521 (U.S. Olympic Committee was not a citizen of the

---

to a single state, is not a citizen of any state, absent a *specific statutory provision* for its citizenship in a state.") (emphasis added).

[8]In fact, the Bank's Certificate of Organization does not even require that the Bank's principal office be in the State of Washington. *See* Barclays Notice of Removal, Ex. G ("The location of the principal office of this Bank shall be in the City of Spokane, State of Washington, *or at such other city as the Federal Home Loan Bank Board may from time to time determine*.") (emphasis added).

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

state in which it had its principal office, conducted its daily operations, owned its only

property, and exclusively paid taxes, when it was authorized to do business throughout the

United States and in fact did so); *Iceland Seafood*, 285 F. Supp. 2d at 725 (bank's activities

were not localized in District of Columbia, where it had its principal place of business,

because it was authorized to make loans and offer services throughout the U.S., in fact

made loans to entities in other states, and had several branch offices outside the District);

*Auriemma*, 367 F. Supp. 2d at 314 (bank was not a citizen of the state in which its

headquarters were located because it maintained administrative offices in three other states,

solicited through its website business throughout the country, and 54% of its credit card

customers were located out of state).[9]

Thus, this court does not have diversity jurisdiction over these actions under 28

U.S.C. § 1332.

## IV.  THE BANK'S ACTIONS ARE NOT "RELATED TO" A BANKRUPCTY PROCEEDING.

Defendants in two of the 11 actions argue that the Bank's claims are "related to"

bankruptcy cases under Title 11 of the United States Code and thus subject to federal

jurisdiction pursuant to 28 U.S.C. § 1334(b). (*See* Barclays Notice of Removal, No. C10-

---

[9] The cases that defendants cite are irrelevant because they involved corporations that either were not authorized to, or did not in fact, conduct significant activities outside the state in which their principal offices were located. *See Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (bank's activities were localized in Maryland because all but one of its 31 branches were located there, more than two-thirds of its residential mortgages were located there, two-thirds of the loans it serviced were secured by property located there, and for loans secured by property located elsewhere, payments were made in Maryland); *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 456 (3d Cir. 1959) (bank was a citizen of New Jersey because its charter limited its place of business, operations and membership to New Jersey); *Elwert v. Pac. First Fed. Savs. & Loan Assoc.*, 138 F. Supp. 395, 401–02 (D. Or. 1956) (federal savings and loan association was citizen of Washington where its charter did not authorize the transaction of business in other states).

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

139, ¶ 16 ("This action is related to the IndyMac Bankruptcy because IndyMac owes an indemnity obligation to Barclays"); Deutsche Bank Notice of Removal, No. C10-140, ¶ 18 ("This action relates to AHM's and Alliance's bankruptcy rights in light of the Defendants' rights to indemnification and contribution from AHM and Alliance in the event a judgment is entered against the Defendants in this action").)

The Bank's actions are not "related to" any bankruptcy proceedings, because the actions cannot have any direct effect on the bankruptcy proceedings. And even if this Court could exercise jurisdiction under section 1334(b), it should nevertheless remand these cases on equitable grounds pursuant to 28 U.S.C. § 1452(b).

**A.     This Court Does Not Have Jurisdiction Under Section 1334(b).**

To determine whether a case is "related to" a federal bankruptcy, the Ninth Circuit has adopted the test first stated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995).

> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). The Ninth Circuit has made it clear that it intends faithfully to apply the letter of the Third Circuit's holding in *Pacor*. "We conclude that the *Pacor* definition best represents Congress's intent to reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding . . . to the extent that other circuits may limit jurisdiction where the *Pacor* decision would not, we stand by *Pacor*." *Id.* (internal citations omitted).

PLAINTIFF'S OMNIBUS MOTION TO REMAND
NO. 2:10-cv-00132-RSM – Page 21

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   Under *Pacor* and *In re Fietz*, the Bank's actions are not "related to" a bankruptcy

2   proceeding. In *Pacor*, the Third Circuit considered whether a suit seeking damages for

3   plaintiff's exposure to asbestos supplied by Pacor, a distributor of chemical supplies, was

4   "related to" the bankruptcy of the original manufacturer of the asbestos. The court

5   concluded that the action could have no conceivable effect on the bankruptcy estate of the

6   original manufacturer because it was, at best, "a mere precursor to the potential third party

7   claim for indemnification . . . . [A]ny judgment received by the plaintiff [] could not itself

8   result in even a contingent claim against [the original manufacturer], since Pacor would still

9   be obligated to bring an entirely separate proceeding to receive indemnity." *Pacor,* 743

10  F.2d at 995. In *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002), the Third

11  Circuit clarified its prior holding in *Pacor* that an action is "related to" a bankruptcy only if

12  it could conceivably have a *direct effect* on the bankruptcy estate, without the need for a

13  subsequent lawsuit.

> The test articulated in *Pacor* for whether a lawsuit could "conceivably" have
> an effect on the bankruptcy proceeding inquires whether the allegedly
> related lawsuit would affect the bankruptcy proceeding *without the
> intervention of another lawsuit*. Therefore, because any indemnity claims
> that [defendants] might have against Debtors have not yet accrued and would
> require another lawsuit before they could have an impact on [the debtor's]
> bankruptcy proceeding, [the district court did not err in concluding that it
> lacked "related to" jurisdiction].

*Id.* at 382 (emphasis added); *see also Steel Workers Pension Trust v. Citigroup, Inc.*, 295

B.R. 747, 753 (E.D. Pa. 2003) ("[N]ot all indemnification agreements between a defendant

in a civil action and a non-party bankrupt debtor create 'related to' jurisdiction under

§ 1334(b). Only when the right to indemnification is established and is not contingent on

the filing of a separate action is the case related to the bankruptcy proceeding. Thus, in

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   performing the 'related to' jurisdiction analysis, the indemnification contract must be

2   examined.").

3          Precisely the same reasoning applies to the indemnification and contribution claims

4   that defendants in these actions may be able to assert against bankrupt originators of

5   collateral. Both the Barclays and Deutsche Bank defendants argue that, if a judgment is

6   entered against them in these actions, they will be entitled to seek "contribution and/or

7   indemnification" from the bankrupt originators of the collateral. No judgment in any of the

8   Bank's actions, however, could "itself result in even a contingent claim against" the

9   bankrupt originators, because the Barclays and Deutsche Bank defendants still would be

10  "obligated to bring an entirely separate proceeding" against the bankrupt estates to prove

11  that they are entitled to indemnification or contribution. *Federal-Mogul*, 300 F.3d at 380.

12         For example, Exhibit D to the Barclays notice of removal is an "Amended and

13  Restated Mortgage Loan Purchase Agreement" between Barclays and IndyMac. Section

14  14.01 of the Loan Purchase Agreement states that "[t]he Seller [IndyMac] shall indemnify

15  the Purchaser [Barclays] . . . against any and all claims . . . related to . . . any breach of any

16  of Seller's representations, warranties and covenants set forth in this Agreement."

17  Obviously, that right of "indemnification" does not become automatically enforceable upon

18  the entry of a judgment against Barclays.[10] Instead, Barclays will have to allege and prove

---

[10] Barclays also attached two other indemnification agreements to its notice of removal. The first, Exhibit E, has substantially similar language that provides for indemnification only if Barclays can prove that the bankrupt originators breached a representation or warranty. The second, Exhibit F, does not appear to be relevant. It provides indemnification only for claims based on the Free Writing Prospectus, but not for claims (like the Bank's) which are based on the Prospectus Supplement. The Deutsche Bank defendants did not attach any written indemnification agreements to their notice of removal. Based on the notice of removal itself, however, it appears that if Deutsche Bank does indeed have written indemnification agreements with the bankrupt originators, they will apply only if Deutsche Bank can prove that the originators breached a representation or warranty.

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

that its liability is related to a breach of a specific representation and warranty in the Loan Purchase Agreement. That will require, at a minimum, precisely the kind of "entirely separate proceeding" that caused the Third Circuit in *Pacor* to conclude that the action was not "related to" a bankruptcy proceeding.

### B. Even If These Two Actions Were "Related to" Bankruptcy Proceedings, This Court Should Remand Them on Equitable Grounds.

Even if this Court were to conclude that these two actions are "related to" a bankruptcy under section 1334(b), still the actions should be remanded to state court on equitable grounds. The bankruptcy removal statute, 28 U.S.C. § 1452, provides that "[t]he court to which such claim or cause of action is removed [as 'related to' a bankruptcy proceeding] may remand such claim or cause of action on any equitable ground." Courts have held that "[a]ny equitable ground" provides an "unusually broad grant of authority," which "subsumes and reaches beyond all of the reasons for remand under the non-bankruptcy removal statutes." *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007).

Courts in the Ninth Circuit consider several factors in determining whether to remand on equitable grounds, including: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court. *See, e.g., Parke v. Cardsystems Solutions, Inc.*, 2006 WL 2917604, *4 (N.D. Cal. Oct. 11, 2006) (citing *Hopkins v. Plant Insulation*

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

*Co.*, 349 B.R. 805, 813 (N.D. Cal. 2006) and *Williams v. Shell Oil Co.*, 169 B.R. 684, 692–

2

93 (S.D. Cal. 1994)).

3

4          All of these equitable factors weigh heavily in favor of remand in these two actions.

5   As discussed in detail above, these actions will have no direct effect on any bankruptcy

6   estate (factors 1 and 5). Even if the Court were to conclude under the broadest possible

7   reading of *Pacor* that these actions could have a remote, "conceivable" effect on a

8   bankruptcy case, still the remoteness of these claims to the bankruptcy estates to which they

9   allegedly are "related" must weigh in favor of remand. Moreover, state law claims not only

10  "predominate" in these cases, they are the *only* claims that the Bank pleads (factors 2 and

11  3). Washington state courts have a developed a robust body of law construing the

12  Washington Securities Act and are best equipped to interpret their State's own statutes. The

13  Bank also is entitled to a jury trial on its claims under the Act (factor 6), which, again, will

14  be available as a matter of course in state court, but would be unavailable (without the

15  consent of all parties) if these action were to be tried in a federal bankruptcy court. *See In re*

16  *Cinematronics*, 916 F.2d 1444 (9th Cir. 1990).[11]

17

18

19  _____

[11] *See also, e.g., Parke*, 2006 WL 2917604, at *4–*5 (remanding case on equitable grounds

20  where claims were brought under state law and implicated complicated issues on which
California courts had yet to rule; comity supported keeping case in state court because

21  putative plaintiffs were all California residents; there was little relation between plaintiffs'
class action and the bankruptcy proceedings; and transfer of the case to the bankruptcy

22  court presiding over the bankruptcy case would only muddy those proceedings); *Williams*,
169 B.R. at 693–94 (holding that equitable remand was warranted where claims involved

23  state law only; state court had invested significant resources to coordination and
adjudication of related products liability cases; actions were remotely related to bankruptcy

24  case; plaintiffs had a right to a jury trial; and plaintiffs would suffer great prejudice if action
were transferred to district in which bankruptcy was pending). *Cf. Senorx, Inc. v. Coudert*

25  *Bros., LLP*, 2007 WL 1520966, at *3 (N.D. Cal. May 24, 2007) (equitable remand not
warranted where resolution of case would have significant effect on bankruptcy estate;

26  plaintiff's claims against nondebtor partners were inextricably linked with its claims against
debtor; plaintiff's claims involved straightforward issues of state law; and comity did not
support remand because state court had not made significant progress in case prior to

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   Most importantly, however, the Bank would suffer substantial prejudice if these

2   actions are not remanded on equitable grounds (factor 7). The Bank has filed 11 related

3   actions in Washington state court. Only two of those 11 actions were removed on the basis

4   of "related to" bankruptcy jurisdiction under section 1452. If these two actions were to

5   remain in federal court while the other nine actions are remanded to state court, the Bank

6   will be forced to litigate these substantially similar actions on two separate fronts. And if

7   the actions that remain in federal court are transferred to a federal court in a different

8   district (by the Judicial Panel on Multidistrict Litigation), then the Bank would be forced to

9

10  litigate the actions in two (or perhaps even more than two) separate courts in different

11  states. This would substantially increase the costs of litigation for the Bank and force two or

12  more court systems separately to administer actions that would most efficiently be managed

13  together. Worse, dividing the cases in this manner would create a serious risk of

14  inconsistent verdicts (factor 4), which could easily be avoided by remanding these two

15  actions to state court on equitable grounds. *See Western Helicopters, Inc. v. Hiller Aviation,*

16  *Inc.*, 97 B.R. 1, 7 (E.D. Cal. 1988) ("In addition to the unnecessary expense and expenditure

17  of duplicative judicial resources, bifurcating this civil claim creates the real danger of

18  inconsistent results. Such a risk should be avoided if there are no countervailing benefits.").

19

20                                    **CONCLUSION**

21      "The party asserting jurisdiction bears the burden of proving that the case is

22  properly in federal court." *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d

23

24  952, 957 (9th Cir. 2001); *see also Haisten v. Grass Valley Medical Reimbursement Fund,*

25

26  removal); *Pac. Life Ins. Co. v. J.P. Morgan Chase & Co.*, 2003 WL 22025158, *2 (C.D.
    Cal. June 30, 2003) (declining to remand where plaintiffs alleged both federal and state

PLAINTIFF'S OMNIBUS MOTION TO REMAND
NO. 2:10-cv-00132-RSM – Page 26

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

*Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986).  Moreover, there is a "strong presumption

against removal." *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1089 (C.D. Cal. 2005)

(internal quotation marks and citations omitted), and "any doubt about the right of removal

is resolved in favor of remand." *In re Edward Jones Holders Litigation*, 453 F. Supp. 2d

1210, 1212 (C.D. Cal. 2006). For the reasons argued above, defendants cannot prove that

these actions are properly in federal court. The Court therefore should remand all 11 actions

to state court.

  DATED:  March 11, 2010.      **YARMUTH WILSDON CALFO PLLC**

By:  */s/ Matthew A. Carvalho*
Richard C. Yarmuth, WSBA No. 4990
Matthew A. Carvalho, WSBA No. 31201
818 Stewart Street, Suite 1400
Seattle, WA 98101
Phone:  206.516.3800
Fax:  206.516.3888
Email: yarmuth@yarmuth.com
          mcarvalho@yarmuth.com

**GRAIS & ELLSWORTH LLP**
David J. Grais (*pro hac vice*)
Owen L. Cyrulnik (*pro hac vice*)
Leanne M. Wilson (*pro hac vice*)
70 East 55th Street
New York, New York 10022
(212) 755-0100
(212) 755-0052 (fax)

*Attorneys for Plaintiff Federal Home Loan
Bank of Seattle*

---

claims, and possible transfer to MDL panel would provide coordination and efficiency that
weighed in favor of retaining federal jurisdiction).

PLAINTIFF'S OMNIBUS MOTION TO REMAND
NO. 2:10-cv-00132-RSM – Page 27

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888